Good morning, your honors. May it please the court, Leanna Carter for Appellant Kia Davidson. I would like to reserve a couple of minutes for rebuttal. Thank you. Now, at issue in this case are two main things. Number one, waive statements and what's required of an appellant to respite class policies and certification when a plaintiff is not given the proper opportunity to develop pre-certification discovery. Let's go with the waive statement claims first. On that claim, it would be helpful just, I'm only one of three, but if you could discuss waiver, opposing counsel argues that this claim is waived. So could you go to that? Sure. Yes, appellant definitely can go on appeal and discuss the dismissal of the waive statement claim. What she did is she expressly preserved her right to appeal this issue because she expressly preserved her right to appeal the certification denial. But she didn't appeal this particular first cause of action. She didn't preserve her right to appeal that. She said right to appeal the court's denial of class certification and Yes, but indicated in that the class certification denial, in fact, explicitly discusses the dismissal issue. And in fact, the only ground the court gave for denying class cert on the waive statement claim was the dismissal of the waive statement claim. And therefore, in order to go into the reasonable as moot, excuse me, you mean dismissal as moot? The dismissal as moot and necessarily included in review of this denial of certification then is a reasoning and grounds for which the court gave to deny that wage statement claim. And any meaningful review of those grounds, including mootness grounds, means a discussion on the dismissal issue. And therefore, it's rightfully before the court. And we're discussing the wage statements because as you know, there are nine categories of information that are required to be listed on an employee's pay stub. And the one at issue now is the address of the entity that is the legal entity of the employer. And I know that's a mouthful, but basically what we're saying is that the information required on these wage statements don't necessarily include only a P.O. box address for the corporate entity. Could you put an ambiguity on this point about the word address? Why is it ambiguous? Why Sure. It's ambiguous because it's subject to multiple interpretations. And that's certainly one error that the court made because the court simply took a narrow plain meaning approach and didn't look to the fact that, number one, we have two agencies, the LWDA and the DLSE, in charge of interpreting and enforcing the labor code. And they have determined the exact opposite of the district court. What deference are they owed? Well, they are owed great deference here. Do we have any interpretation? I didn't see any interpretation. I saw you asking us to make inferences. So you have DLSE's exemplar, which doesn't have any interpretation of the statute. And you have the LWDA letter, which just says, you know, thank you for correcting your violation, but has no interpretation. And so you're asking us. So I didn't see any authoritative interpretation by the agency. Okay. So is there any authoritative interpretation where they actually address the language of what address means? Yes. As a matter of fact, first going back to the deference it's owed, it's owed great weight and courts generally would not... I don't have anything to defer to at this point because I don't have an authoritative interpretation. So the agency could have provided an interpretation via regulation, or they could have provided an interpretation in a guidance document. But I didn't see anything like that in the record. Well, in the record is an interpretation of the DLSE from the declaration of a former senior deputy laborer. So you have someone who no longer works there saying what he thinks DLSE construed it as. Well, I don't find that authoritative. Since your time is ticking, it would be helpful for me. I think you haven't really answered Judge Akuda's question, and it would be helpful to me. Is there any definitive interpretation by the agency? Yes, there is. As opposed to how they have applied it? Those are two different things. Okay. Well, the letter from the LWDA actually says that the correct address was had on the wage statements. It's undisputed that O'Reilly reissued three years worth of wage statements because the... We're trying to figure out if the agency has ever said, here's really how it is to be interpreted in the form of any kind of official guidance as opposed to how they've actually applied it in practice. Could you just answer that threshold question first? Sure. There's no interpretive guide or official guide on that matter here in the record. That's helpful. Instead, what we have is an undisputed record that shows O'Reilly reissued wage statements that solely had the post office box, and it said they reissued them to include the specific physical street address because the LWDA said that that would cure a violation. People are griping, and it's easy for them to do it. I understand that. But when we're trying to interpret a legislative enactment, can you help me as to, as a matter of law, how the address really helps when it's in Missouri, and it could be a gravel yard or it could be one that is... There's nothing that says you have to have agents there. There's nothing that says you have to accept process. So other than a theoretical argument, what does an address in Missouri that might have nothing to do with wages whatsoever, what does that get you realistically? Well, realistically, the purpose of the statute wasn't intended to only apply to some employer that has its place of business at Missouri and has another place of business somewhere else. The statute is meant to apply everywhere and broadly for the protection of employees. And that means you can't simply just walk up to a PO box and ask questions of the employer. You can't make oral requests for records at a PO box. In fact, a PO box is simply a barrier between the employer... There's no indication in the statute that you need to have records or even an employee on duty at the, quote, physical address. Does the statute allow for record inspection? Yes, it allows for record inspection, and it says you can make a written and oral request. So you could call up the employer and ask to make an appointment to review the records. So that would be an oral request, correct? Yes, or in person would be an oral request, but you certainly can't do that at a post office box. You've used about half your time. I'm really interested to hear about your argument about denial of discovery. Okay, yes. As you know here, what the court did was plaintiff submitted... Actually, the party submitted joint stipulations to the district court saying, here's the case. When those two requests were denied, the stipulated requests for extension of time, were reasons given? No, there was no reason given. Not in writing, but was there any kind of court hearing? It was denied. You see a stamp of denial. It's on the record for those stipulations. But pertinent here is that the court basically told the plaintiff, even though she provided the stipulation, which she detailed, and in fact, one specific section of the stipulation entitled pre-certification discovery, it goes for over a page long discussing why this was needed. Both parties agreed that it was needed, and I quote, the plaintiff's discovery would include the contact information of putative class members. Plaintiff claims the putative class would be prejudiced without this discovery at class certification, because she contends it bears upon the commonality and predominance of the labor code issues among class members as a whole. The subsequent requests seem to drift off into looking for 30B6 information from O'Reilly and focusing on the policies. Did Davidson raise the need for interviewing the employees or getting the time, the hour data from O'Reilly subsequent to the first request? She moved for class certification based on the fact that the court had already denied that, because she put her best foot forward under the strict 90-day deadline. She didn't raise that again or say that she needed more time for discovery. I think that the court gave her a month to have a supplemental brief after the deadline. Did she say that she needed more time to get this information? With that single supplemental brief, it was only limited to five pages. It was only limited to the fact that there was one corporate witness who wasn't... Was the answer to the question no? Yes, because the court limited it to just... How many times did you put the court on notice that you needed access to this class certification discovery, please? It was in the main joint stipulation that was filed with the court that detailed exactly the long process that it takes in order... Then that was denied. Again, I'm not trying to get in your way, but your time is ticking and it's an important chronology. Sure, I understand. How long then until the second stipulation was filed, please? Well, there was actually... The first stipulation was filed on August 2nd. And then there was a second stipulation that was filed shortly thereafter. And did it put the court on notice of what was needed? That stipulation only went to asking for a short 14-day period for the unavailability of corporate witnesses. And within that stip, the parties acknowledged, we've already asked the court in this initial stipulation, so we're not going to try again for something the court already denied us. I'm curious about... You'd be amazed sometimes what we can't tell on appeal. And so what we have is this case, ABS Entertainment, in which our court said that Local Rule 23-3 is impractical and incompatible with Federal Rule 23. What I can't tell so well is what has happened in the aftermath of that. Was that Local Rule 23.3 applied in this case or dash 3 applied in this case? Can you speak to that? Yes. In fact, that's the heart of the matter here because that now-defunct rule was applied strictly by the district court. The district court required plaintiff... Where do we see that? That the district court followed this rule? Because this rule sets forth the 90-day deadline. And so the plaintiff was required... All these stipulations asked to push that out. The court said no... Am I understanding you correctly that when you say now-defunct, it wasn't defunct yet at this time, is that right? And ABS came out after this, is that right? Exactly. And that's the whole point of this here because the district court did not have the benefit of the guidance from the Ninth Circuit, who now struck down the exact process that happened here. And so plaintiff had to file her class certification motion within that strict 90-day deadline, and she did so. And that's precisely what happened in the ABS case. That plaintiff also had to file her certification on that deadline, even though the court denied her pre-certification discovery, which she had asked for in the stipulation. And the district court here did not have the benefit of that. And since that has gone forward, if you look up the rules, the local rules under Central District 23-3 today, you'll see that that rule no longer applies. Thank you. In fact, it mirrors Rule 23, which provides a more flexible approach. Counsel, on the question of what you would have done or could have done if you had had more time for discovery, is there any statement by anyone, including the named client herself, that anybody ever didn't get a rest break under the proper standard, that is between 6 and 8 hours and you only got one break instead of two, you would think that the claimant herself and a friend or two would have been able to say that that happened at some point. Is there anything in the record by anybody that says that? Well, actually, the operative pleading contains those exact very allegations in which the plaintiff says that as a result of these policies, she, in fact, often didn't receive any rest breaks. She said she didn't recall getting premiums for rest breaks. Yes, that's in her declaration. But it's also taken in conjunction with the operative pleadings in which she does allege that she did not receive hardly any of the rest... My understanding is the operative complaint says that the rest breaks were non-existent. And then there's this declaration, which is, you have to work the declaration a bit because she says she worked 6 or 8 hours and then says she didn't get the premiums. The premium would have been due if she hadn't been given the rest break as an operation of law. Yes, and it's only relevant because she didn't receive those rest breaks. That's why the premium is relevant. Right, right in conjunction with the allegations in her complaint, which says she... Which is the paragraph in the complaint I should read? This is the second amended complaint. And I can find that paragraph for you. But I believe it's paragraph 55. But I can go ahead and take a look at that and I'll rebuttal for you the exact part Do you want to save some time for rebuttal? Yes, I do. Good morning. May it please the Court. Jim Peterson of Hicks, Fletcher & Mack for the Appellee of Riley Auto Enterprises. It must be Hicks, Fletcher & Mack Day. My partner, Mr. Leeds, was up here earlier this morning. I want to briefly address this preservation on appeal issue on the PO Box case. I think you've all hit the nail on the head that at the end of this case there was a consent judgment where the plaintiff dismissed her individual claims, dismissed her class action claims, and expressly preserved her right to appeal the motion for class certification and the motion for summary judgment. There was no preservation of the right to appeal the motion to dismiss. She's taking a pretty backdoor approach. It's a little convoluted, right? She's saying that she agreed to preserve, right, the denial of the motion that encapsulates the Court's ruling that this issue was moot. Right. And she wants to challenge that. So that's her argument. I understand. Why is that not sufficient? Well, because if you look at the law, when you consent to a judgment, you ordinarily don't have the right to appeal from it. Well, of course, she didn't consent to this ruling. She lost this ruling. No, I understand. But when you consent to a judgment, you can only appeal from that judgment if you expressly and unequivocally define what you want to appeal from. It depends on the scope of the judgment because she did not consent to losing this claim. She lost this claim. Correct. He ruled against her, right? Yes, and if you look at the motion for class certification, did the Court abuse its discretion in deeming that class claim moot by virtue of the motion to dismiss? That's really all this Court can analyze for abuse of discretion. We're talking about preservation. I understand that. And I guess my point is if they wanted to preserve the motion to dismiss, they should have expressly stated that in the preservation in the order itself. He's saying that the backdoor approach is too complicated. Well, and it just doesn't fit the law under that Slavin case and the cases that are cited with it. Could you go to discovery? What about this local rule? What should we make of that? I really appreciate that the District Court didn't have the benefit of this ABS case, but it's a published opinion. I just really would benefit from hearing it. Let me share some insight. To answer the question about what the local rule says now, I actually brought it, and it says that the earliest possible time after service of a pleading purporting to commence a class action other than an action subject to something irrelevant, Securities Act, but no later than any deadline set by the assigned judge, the proponent of a class action must file a motion for certification that the action is maintainable. So it gives the court discretion to set the deadline they deem reasonable. You think it would be reasonable for the court to set the same deadline in light of ABS? Well, I think it would depend on the facts of the case. No, that's not my argument. I think it would have to be based on a case-by-case basis. And let's talk about... So in this case, the difficulty I'm having, and I want to give you a fair chance to respond to her, is that I did a timeline about when the requests were made and the responses, and it looked to me like there were no delays here on plaintiff's side, that she was moving quite expeditiously and efficiently trying to get at this information. Well, and here's where I would beg to differ with that conclusion. If you look at the stipulation as we just went through, the first stipulation was in August, August 2nd, I believe, and there is some, what I considered, wrote reference to getting contact information. The evidence shows that on August 31st, O'Reilly responded to that discovery and said, look, as soon as we send out a Bel Air West privacy notice, we'll give you that contact information. Now, from that point forward, the plaintiff never acted again. How many times does she have to ask for it? What's the law about that? Well, I think what the... If you look at the cases, the Perez case, for example, the ABS case, in those cases, the plaintiff in those cases filed motions with the court explaining to the court, here's what I need, here's why I need it, and here's how it'll impact the motion. A motion because she had a stipulation, sir. Why would she file a motion? She's got a stipulation. Well, once the court denied the initial stipulation and the other stipulations were filed, I think the court... We don't know because there was no motion, but I think the court is saying, what do you need this for? After the second stipulation was denied, how much time did she have? After the second stipulation was denied... Well, the second stipulation was submitted on the day the brief was due. Would have been pretty tough to file a motion. Well, she could have filed the motion between August and September. And here's the other point that I... In this time frame, it's a very condensed time frame. It really goes back... And this is what I'm struggling with. I just want to be as upfront as possible. ABS has recognized this time frame is really, we've said, incompatible and unrealistic. And we don't know that the court... Well, keep in mind what the court ultimately did. Once the plaintiff submitted the joint... Well, once we both submitted the second stipulation and we both said, hey, we've got some scheduling problems, the court gave plaintiff more time, modified the 90-day rule, allowed supplemental briefing, reset the briefing schedule so the opposition was due later, the reply was due later. After she got the 30B6. Did she ever get the requested class information? She never asked for it. Well, she has. No. And that's the other point I want to make about this. She asked in an interrogatory for the information. Right. The response that O'Reilly gave was, once we do a Bel Air West privacy notice, you will get it. And I don't know if you're all familiar with the Bel Air West case. From that point forward, the plaintiff never asked for it again. They never... She didn't ask for it again. She never sought the Bel Air West notice. She never got the information. The plaintiff sat on her heels and did nothing. Does she have to do something to trigger the Bel Air West notice? Yes. To approve it in some way? Correct. Typically what happens in these class cases is the parties will work together to develop a Bel Air West notice, submit it to the court for approval, because it impacts privacy rights. The court will approve the notice and the notice will go out. Once you say, we'll do the Bel Air West notice, you needed to get together, which required both of you. Exactly. And not once did they ever do that. And what's telling in this regard, and I don't think we mentioned this in our briefing, I think the most striking evidence... It's our position that the plaintiffs are coming in here asking for discovery they never even wanted or needed, because they felt, the plaintiffs felt, if you look at their briefing, if you look at the entire docket, their theory in this case was, a facially violative policy on its face was enough to get certification. We don't need evidence that it was implemented in practice. That was the argument they advanced at the trial court. That's part of the argument they advanced here in this court. If you look at the summary judgment motion we brought, so in May of 2018, it's docket number 69, we end up bringing a motion for summary judgment on the PAGA representative claim. Once the class was denied, there was still this PAGA representative claim on behalf of the state of California and the same group of employees, now aggrieved employees instead of putative class members. And the basis of the motion was, the plaintiff doesn't have any evidence that any aggrieved employee was denied a rest break. Now, in that intervening six months, you would think if the plaintiff thought they needed more than the facially violative policy and really felt they needed evidence of practice, practice evidence like all the cases say you need, they would have gone out and gotten it. But guess what? When they opposed our motion for summary judgment on PAGA, they doubled down. And once again, they said, we, court, deny this motion for summary judgment because of this facially violative policy, and they relied upon the 30B6 witness, and they relied upon the documents. And they didn't get a single declaration from a single person. Well, for that part, they didn't. This really goes to predominance. She had a predominance claim. That's what the judge relied upon. Correct. And I think that the court... And the defendants haven't, in fact, they conceded they had a uniform policy, but apparently not that one that they were following. Correct. There was an employee handbook which complied with the law. There was practice evidence that complied with the law. It's simply a different issue in the case. Well, but I guess my point is that this idea that they were denied discovery, and had they had it, it might have altered the outcome on the class certification motion, from my perspective, having litigated this case, is nonsense. They raised it one time in an early stipulation, casually, and then never raised it again. Not in the second stipulation, not in opposition to the motion. When they opposed the motion for class... I'm sorry, when they brought the motion for class certification, there's a declaration of counsel. Nowhere in there does he say, hey, if I could go out and do this, or get this, or do that, here's how it'll impact the motion, court, and here's why it's important for you to address commonality. They now seem to say that the complaint itself says that she never got rest breaks. And that's not true. If you look at paragraph 31 of the complaint, what it says is that O'Reilly has a facially violative policy. That's what she relied upon in the complaint. Well, it says, and if I'm... She cited... Opposing counsel cited paragraph 55, which says, upon information and belief, defendant failed to schedule rest breaks in accordance with California law. It does say that. If you look at the declaration that was submitted by plaintiff in support of the motion for class certification, as the court pointed out, the evidence that she submitted doesn't even reference missing a rest break. Paragraph 4 says, during my employment with O'Reilly, I recall sometimes working a shift between 6 and 8 hours. I'm not aware of premiums. But the premium... I'm really... In fairness, the premium would have been due if she hadn't received the rest break the law required her to be given, right? Well, but she never says that she was denied a rest break. Right? She said she worked 6 to 8 hours. Right, but... That doesn't mean that she was denied a rest break, right? You can't violate the law with words on it. There's a negative pregnant in there in the sense of, should that be read to include the negative pregnant that I didn't get the break? Well, that's the question. I mean, there's a lot of times when... The alternative is it's artful pleading. I never got the breaks. I mean, I never got the premium. I write that in because I never was denied the break. Okay, so let's look at that. Let's say Ms. Davidson did have evidence that she didn't get a break. That's not enough to propose or create a common issue that would predominate and certify a class. Is there any issue... So O'Reilly submitted declarations from some 300 employees saying that they were not injured in that way, that they did receive rest breaks. And assuming we read the affidavit with the negative pregnant that she was denied rest breaks, is that the only evidence that's used to support the class motion of a common injury? Because I know Walmart tells us there's supposed to be an injury that's common to the class. What other evidence was there of injury to the class? There was not. Well, actually, there's her statement. There's the 30B6 testimony, right? The 30B6 disposition that has to do with the two handbooks. There isn't a denial that they had a uniform policy. It's just a dispute about whether it was that policy. And then she has a couple of documents from the Jimenez litigation. So the evidence was... She wasn't given discovery to get the declarations that O'Reilly was given. So this is the whole nub of it for me. No, I understand. And the reason that there isn't discovery is because she never advanced it because the plaintiff made the strategic decision in the trial court on the class cert motion and in opposition to the motion for summary judgment 14 months into the case that I can establish liability on a common basis, class or representative, just by basis of the allegedly facially violative policy and no more. That's the position the plaintiff took from day one. It's this appeal where they're now coming in and flip-flopping for the first time. But it is pretty tough to... The question about how many times does she ask and it was a stipulation and a difficulty for us is we have a published opinion saying that this time frame for discovery is unreasonable. Right. But we also have one time when she asked in early August and when they submitted their supplemental... The court gave them time to do the depositions. They submitted that supplemental brief. Right? And then they submitted another declaration. So now you've got a declaration of counsel with the motion, a declaration of counsel with the supplemental brief. Not once did they say, hey, your honor, by the way, here's our Bel Air West notice. We'd like to go out and issue this and will you delay ruling? Yes. You had no participation in that? Your client did not? No, because we put... That is not what you said. It is normally jointly repaired but the plaintiff advances it. Look, as a defendant, if they've asked me for names and I say, let's get a Bel Air West notice and I'll give you names, am I going to be the one to go and advance that if the plaintiff wants to get contact information for the employees? The plaintiffs always advance that cause if, in fact, they want to get that contact information. And the fact that they never sought it throughout the entirety of this litigation to me speaks volumes about the fact that they never thought they needed it because they relied upon some state court cases that I think are bad law especially in light of the Cacho case that we cite in our supplemental brief that you could rely just upon paper and words on paper don't violate the law. So I would submit that if you look at the court's discretion to manage the calendar and compare it to these other cases where the lawyers came forward with declarations not just a joint statement but a declaration that said here's what I need, here's why I need it here's what it'll prove and here how it's relevant to the motion. Those are cases where it's necessary to file a motion. She had a stipulation. No, I understand that initially, but then she abandoned it. The other stipulations never sought it at all. It was all about other stuff. And she never, throughout the entirety of this litigation, not once did plaintiff try and get these declarations because she made a strategic decision that the facially violative policy was enough. And we all know under the law it's not. Alright, I think we have your argument and you have some time for rebuttal. There's two issues that we can address right now. First, we wouldn't even be talking about a Bel Air West notice if plaintiff hadn't put that before the court as something that is imperative and needed to be sent out to the class. When in fact they did say that they would supply a sampling of the class list. They did so at the end of August and her class certification motion deadline was looming that next month in September. She detailed for the court in her stipulation why that was not enough time. Even way back when the stipulation happened in early August there certainly wasn't enough time to get that Bel Air West notice out, to have 30 days for the class members at a minimum to respond whether or not they wanted the disclosure of their contact information and then time to actually go out and We wouldn't be talking about that at all if not because the plaintiff in fact did put that at issue and told the court she needed this for certification. Is it true the opposing counsel says it wasn't followed up on? It was just that no inquiry or preparation of the Bel Air West notice took place on the plaintiff's part. Is that correct? No, what counsel is doing is trying to get the court to look at the... Is that correct? That there wasn't any follow-up? There wasn't any follow-up in the sense that the plaintiff had already been asked and answered. She already asked the court, what can I do here? I desperately need this. And the court said no, the court did not push out the deadline for her. And then secondly we're talking about pre-certification discovery, not what's happened since certification. She was not granted enough time to develop that discovery to support her motion and then the court turned around and said  That's a clear abuse of discretion. And going back to the paragraphs in the SAC, the operative complaint is paragraph 54 and paragraph 55, which says Throughout her employment, plaintiff regularly has not received any rest periods during her shifts. Okay, please wrap up. You're over time. Alright, so just based on ABS alone, there's a clear abuse of discretion here. And that's in the complaint but not in the declaration. Is that right? In the declaration, which must be read with all of her allegations, she mentions that she doesn't receive the rest breaks. Legally, is there any difference on class certification between that is, can you stand on what's in your complaint, even if it's not supported by any declaration when you ask for class certification? Well, the point here is that she wasn't even entitled to get the pre-certification discovery to get the class member declaration. Perhaps I'm I don't agree with you as to what the declaration means. My legal question is, is a complaint alone, for summary judgment, you look at some things afterwards. Is class certification the same or can you rely strictly on the complaint? I think the court relies on everything that's before it when it rules on class certification. And here, there wasn't enough evidence. She wasn't allowed to provide enough evidence to support her class certification motion. Thank you. We thank both sides for their argument. The case of Kia Davidson v. O'Reilly Auto Enterprises is submitted.
judges: Boggs, Ikuta, Christen